POLSINELLI PC
Jason A. Nagi
900 Third Avenue, 21st Floor
New York, New York 10022
jnagi@polsinelli.com
(212) 644-2092
*Attorneys for Defendant, Jay Chernikoff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA BERNSTEIN,

                Plaintiff,

     vs

JAY CHERNIKOFF,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

No. 1:14-cv-02540-VSB

## REPLY DECLARATION OF JAY CHERNIKOFF

## IN SUPPORT OF MOTION TO TRANSFER VENUE

I, Jay Chernikoff, declare that the following is true:

    1.    I am the defendant in the above-captioned case pending before this Court.

    2.    I make this declaration of my own personal knowledge and, if called to do so, would testify consistent with the facts stated herein under oath.

    3.    I submit this declaration in support of the Motion to Transfer Venue filed on my behalf in this matter on June 5, 2014 and in reply to issues raised in Plaintiff Joshua Bernstein's ("Bernstein") opposition to the motion.

    4.    I confirm the accuracy of the statements within my Declaration dated June 5, 2014.

    5.    I do not dispute that Bernstein and I jointly looked into real estate opportunities together, or that we discussed using Mansard Realty Partners, LLC as an entity to process transactions through if we reached agreement on all of the other terms required to close them.

6. As I stated in my previous declaration, the types of transactions I have been involved in over my career have had varying structures and required me to team up with different stakeholders on a deal to deal basis.

7. I have also used a number of legal entities to take title to properties and otherwise transact business, as do many other people in my line of work. Mansard Realty Partners, LLC ("Mansard") was under contract to close one transaction in New Jersey called Stahl Plaza, referred to in paragraphs 22-23 of Bernstein's declaration. This contract was cancelled before closing.

8. Bernstein and I kept in touch about other potential business opportunities as friends, but not as business partners. The list of "investment opportunities" Bernstein mentioned in paragraph 9 of his declaration and attached as Exhibit 1 consists mostly of properties that we did nothing more than exchange emails about, not things we discussed pursuing as partners. We did not get to the point of even discussing parameters for how those deals would be treated as between each other.

9. I had no involvement in the registration of mansardrealty.com.

10. Bernstein created Mansard naming me as a member, but I have not signed or seen any of its formation documents or an operating agreement, and I did not enter into any oral agreements about how that entity would be operated. My understanding was that he created the entity so that it could be used for the Stahl Plaza transaction. To my knowledge there have been no tax returns filed for Mansard.

11. Bernstein appears to state in paragraph 20 of his declaration that I admitted we created a general business partnership by introducing him to Rafael Castellanos by email as a real estate business partner of mine. I am not a lawyer and I did not use that term in any legal sense. A major part of my line of work is making connections and bringing people together to make business deals possible. As a result of that I've used the words "we" and "partner" and other such terms loosely at times, but it is true that I have never formed a general business

partnership with Bernstein or anyone else.  I am involved in other business interests apart from real estate investment, which is why I made that specific reference.

12. Bernstein appears to suggest in paragraphs 21-23 of his declaration that there were two deals in New Jersey that we pursued together, the one referred to in paragraphs 34-40 of his Complaint and paragraph 16 of my previous Declaration, and the Stahl Plaza deal he describes in his declaration.  These are the same transaction.  Stahl Plaza was the investment that Mansard was created to take title to in 2012.  The deal did not go through and there were no other properties that Bernstein and I used Mansard to purchase.

13. As I stated in my previous declaration, I traveled to New York a number of times while I was friends with Bernstein, but I did not make any special trips there specifically to work on business deals with him.  The trip he refers to in paragraphs 24-26 of his declaration is no exception.  The email attached as Exhibit 8 to Bernstein's declaration from me to Seymour Zises refers to the Northern Terrace transaction that Bernstein and I did work on together before the property owner died, and the deal fell apart.  Mr. Zises is the father of the mutual friend who introduced me to Bernstein.

14. There is no person in the list of witnesses that Bernstein refers to in paragraph 27 of his declaration and attached as Exhibit 9 that could testify that he has knowledge about a partnership agreement between Bernstein and I because we never made such an agreement.  I do not deny that Bernstein and I met with or emailed with most of them during the course of our looking into potential deals as friends.

15. I recognize the brochure for Canyon Place that Bernstein refers to in paragraph 28 of his declaration, which he attached as Exhibit 10.  This brochure is something that Bernstein told me and Gary Sommers he needed to have to try and secure investors.  Canyon Place was currently under contract with another entity when that brochure was written.  Gary Sommers was listed as a Partner and Member of Mansard Realty Partners in the brochure, which Bernstein does not claim to be the case.

16. If Bernstein's claims about the terms of our "partnership" were correct, Mr. Sommers would have been cut out of the Canyon Place deal reflected in the brochure at Exhibit 10 to Bernstein's declaration. That would certainly never have happened, since Mr. Sommers was the one who would be contributing most of the equity and signing guarantees, as described in my previous Declaration.

17. To better explain my statements in paragraph 13 of my previous Declaration, the witnesses in the Phoenix, Arizona area to the two transactions Bernstein is seeking proceeds from include:

   a. Gary Sommers, who I've worked with to qualify for financing on deals, and who is listed in the Canyon Place brochure. Mr. Sommers can attest to the varied nature of the transactions he has worked with me on.

   b. Jeffrey Sherman, Trevor Koskovich, and Bill Hahn, who are brokers at Colliers International who were involved in the Campus Walk and Campus View transaction and the Northern Terrace transaction I pursued without Mr. Bernstein's involvement, can testify to the deal structure and parties involved.

   c. Scott Stein at Stein Law, PLC is the transactional attorney I worked with on the Campus Walk and Campus View transaction and the Northern Terrace transaction. He also has knowledge of the deal structure and parties involved.

   d. Patti Graham, Gina Christensen and Miranda Monroy of Fidelity National Title were involved in the escrow, title, and closing process of the Campus Walk and Campus View transaction and the Northern Terrace transaction.

   e. And individuals I've discussed "partnering with" on deals in Arizona, including Zachary Kepes, can testify that I work with people on a deal-by-deal basis outside of general partnership arrangements.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2014.

                                                              */s/ Jay Chernikoff*

                                                              Jay Chernikoff

48388951